IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable Marcia S. Krieger

Civil Action No. 06-cv-02312-MSK

INVERSORA MURTEN, S.A.,

    Plaintiff,

v.

ENERGOPROJEKT HOLDING COMPANY,

    Defendant,

and

BILFINGER BERGER CIVIL, INC.,

    Garnishee.

## OPINION AND ORDER OVERRULING OBJECTIONS TO MAGISTRATE JUDGE ORDER

**THIS MATTER** comes before the Court pursuant to the Plaintiff's Objections **(# 15)** to the Order **(# 13)** of United States Magistrate Judge Michael E. Hegarty granting Garnishee Bilfinger Berger Civil, Inc.'s ("BBCI") Motion to Set Aside Default **(# 10)**, and BBCI's response **(# 19)**.

### FACTS

The Plaintiff holds a $ 38 million judgment against the Defendant, issued by the United States District Court for the District of New Jersey. The Plaintiff has registered that judgment **(#1)** with this Court. In January 2006, the Plaintiff learned that the Defendant had been retained by an entity named Bilfinger Berger A.G. ("BBAG") to work on a project in Nigeria. BBAG

1

does not have operations in this jurisdiction in its own name, but one of its subsidiaries, BBCI, is located in Longmont, Colorado. Seeking to garnish any funds that might be payable by BBAG to the Defendant, the Plaintiff attempted to serve a Writ of Garnishment **(# 3)** on BBAG. The return of service **(# 4)** for that writ indicates that the Plaintiff served BBAG "c/o" BBCI by having the writ delivered to BBCI by Federal Express on January 31, 2006. Neither BBAG nor BBCI responded to the writ, and several months later, the Plaintiff moved **(# 5)** for entry of default against BBAG on the writ. After requesting clarification on two issues and being satisfied that the Plaintiff made a "colorable argument that service was of process was properly effected," Magistrate Judge Hegarty granted **(# 8)** the request for entry of default.

Shortly thereafter, BBCI moved **(# 10)** to set aside the default and quash the service of the writ, arguing that service by Federal Express was insufficient, that the Plaintiff could not show that the writ was delivered to a proper person on behalf of BBCI, and that BBCI was neither the alter ego nor agent of BBAG.[1] After hearing from both sides on the issue, Magistrate Judge Hegarty granted **(# 13)** BBCI's motion to vacate the default and quash the service fo the writ. Specifically, Magistrate Judge Hegarty found that: (i) Colorado law requires that service of process upon a corporation requires delivery of the process to a registered agent, officer, general partner, or manager of the corporation, C.R.C.P. 4(e), followed by filing proof of that service, C.R.C.P. 4(h); (ii) that the Plaintiff's return of service was subscribed by Carolyn Raio, who is apparently an employee of the law firm representing the Plaintiff and not the Federal Express employee who actually completed the service; (iii) the fact that BBCI informally communicated

---

[1] BBCI declined to elaborate on this argument until the threshold issues relating to the sufficiency of service were resolved.

with the Plaintiff about the writ did not waive its right to challenge the sufficiency of service; and (iv) therefore, "Plaintiff has failed to properly serve BBCI by serving a proper agent of BBCI and providing proof of such service."

The Plaintiff filed timely Objections **(# 13)** to Magistrate Judge Hegarty's Order, raising five points of error: (i) that the Magistrate Judge erred in finding that, pursuant to Fed. R. Civ. P. 69, service of the writ must be made in accordance with the Colorado Rules of Civil Procedure; (ii) that the Magistrate Judge erred in finding that the Plaintiff had not adequately served the writ upon an agent of BBCI; (iii) that the Magistrate Judge erred in concluding that it was the Federal Express employee, not Ms. Raio, that actually served the writ on BBCI; (iv) that the Magistrate Judge erred in concluding that BBCI's informal acknowledgment to the Plaintiff of receipt of the writ did not waive BBCI's ability to challenge the sufficiency of service; and (v) the Magistrate Judge erred in failing to find that BBCI had not shown "good cause" for failing to timely respond to the writ.

## ANALYSIS

### A.  Standard of review

The Plaintiff argues that the Magistrate Judge's Order is a dispositive one, subject to a *de novo* standard of review pursuant to Fed. R. Civ. P. 72(b).  It contends that "it frees BBAG from the obligation to withhold assets," it "diminishes the overall assets and credits subject to garnishment," and "it deprives [the Plaintiff] of the ability to prosecute garnishment proceeding in this court."  The Order does none of these things.  It merely finds that the Plaintiff has failed to effectuate sufficient service of the writ upon BBCI, and makes no findings whatsoever regarding the relationship between BBAG – the actual target of the garnishment – and BBCI.

The Order does not conclusively "dispos[e] of a party's claim or defense," or otherwise operate as a final order. *See generally First Union Mortg. Corp. v. Smith*, 229 F.3d 992, 996 (10th Cir. 2000) (describing dispositive orders as "final decisions" that cannot constitutionally be delivered by anyone other than an Article III judge); *see also Chesher v. Allen*, 122 Fed.Appx. 184, 187 (6th Cir. 2005) (unpublished) (magistrate judge's decision to quash subpoena reviewed under Rule 72(a); "the quashing of a subpoena may affect a case [but] it clearly does not dispose of one"). None of the Plaintiff's rights are permanently altered as a result of the Magistrate Judge's order; that is, the order does not prevent the Plaintiff from attempting to re-serve BBCI with the writ or otherwise attempt to garnish funds owed by BBAG to the Defendant. Thus, it is non-dispositive and subject to a "clearly erroneous or contrary to law" review under Fed. R. Civ. P. 72(a).[2]

Rulings on non-dispositive issues by a Magistrate Judge are reviewed by this Court pursuant to Fed. R. Civ. P. 72(a), and will be reversed only if they are "clearly erroneous or contrary to law." 28 U.S.C. § 636(b)(1)(A); *Hutchinson v. Pfeil*, 105 F.3d 562, 566 (10th Cir. 1997); *Ariza v. U.S. West Communications*, *Inc.*, 167 F.R.D. 131, 133 (D. Colo. 1996). Accordingly, the Plaintiff's Objections will be overruled unless the Court finds that the Magistrate Judge abused his discretion or, if after viewing the record as a whole, the Court is left with a "definite and firm conviction that a mistake has been made." *Ariza,* 167 F.R.D. at 133, citing *Ocelot Oil Corp. v. Sparrow Indus.,* 847 F.2d 1458, 1464 (10th Cir.1988).

The Magistrate Judge expressly declined to reach the question of whether the Plaintiff

---

[2]Even assuming that the Magistrate Judge's Order is indeed dispositive and subject to *de novo* review by this Court under Rule 72(b), upon a *de novo* review, the Court would reach precisely the same conclusions for precisely the same reasons.

was correct in its contention that BBCI is the alter ego or designated agent of BBAG for purposes of service of process. Because those questions are not essential to the outcome of the Objections, this Court will assume, for purposes of discussion here, that BBCI is indeed the alter ego and/or designated agent of BBAG.

**B. Particular objections**

The Plaintiff raises five specific objections to the Magistrate Judge's Order, and the Court will address them in turn.

1. <u>Magistrate Judge erred in applying Colorado law governing service</u>

First, the Plaintiff argues that the Magistrate Judge erred in finding that, pursuant to Fed. R. Civ. P. 69, the Colorado Rules of Civil Procedure govern how a writ of garnishment may be served. The Plaintiff points out that Rule 69(a) provides that state law usually governs procedure in cases involving execution of judgments (including garnishments), but where there is an applicable federal statute defining the appropriate procedure, the federal statute must be applied. The Plaintiff then cites to *Oklahoma Radio Assocs. v. FDIC*, 969 F.2d 940, 942 (10th Cir. 1992), for the proposition that the Federal Rules of Civil Procedure are "statutes" that are "applicable" to garnishment actions, and thus, take precedence over state garnishment procedures that merely incorporate the state's general rules governing service of process (but not over state garnishment schemes that specifically prescribe a unique means by which garnishments may be served). *See also Strong v. Laubach*, 371 F.3d 1242, 1246-47 (10th Cir. 2004). Observing that Colorado's garnishment procedure, C.R.C.P. 103(4)(d), states that "[s]ervice of the writ shall be in accordance with C.R.C.P. 4," the Plaintiff argues that under the *Oklahoma Radio* rule, Colorado's garnishment procedure is trumped by the procedures outlined in the Federal Rules of

5

Civil Procedure. Thus, the Plaintiff contends that the Magistrate Judge erred in looking to the Colorado Rules of Civil Procedure for guidance as to how the writ was to be served here.

Putting aside some criticism as to the 10th Circuit's reasoning in of *Oklahoma Radio* and *Strong*,³ it does not appear to matter whether Fed. R. Civ. P. 4 or C. R.C.P. 4 applies. Indeed, the Plaintiff never argues that a meaningful distinction between the two rules exists. The Plaintiff's silence on this point is particularly curious, insofar as Fed. R. Civ. P. 4(h), governing service of process on a corporation, hews closely to the requirements of C.R.C.P. 4(e)(4). Both rules require that a corporation be served by "delivering a copy" of the process to "an officer" or a "managing or general agent" or the functional equivalent thereof. *Compare* Fed. R. Civ. P. 4(h)(1)(B) *with* C.R.C.P. 4(e)(4)(A), (F).

The Plaintiff does not offer any argument that it delivered the writ to an officer or general agent of BBCI; indeed, nothing in the record reveals what title or role the person at BBCI receiving the Federal Express delivery held. The Plaintiff's failure to show that this person was one of those permitted to receive process under Fed. R. Civ. P. 4(h)(1)(B) prevents the Plaintiff from carrying its burden of proving that its service was proper. *Fed. Deposit Ins. Corp. v. Oaklawn Apartments*, 959 F.2d 170, 174 (10th Cir.1992).

Thus, although the Plaintiff might be correct – and the Court need not make a conclusive finding as to whether it is – that the Magistrate Judge's consideration of C.R.C.P. 4 was contrary to law, the Plaintiff has nevertheless failed to show that its service upon BBCI was sufficient under the correct governing law. Accordingly, this Court affirms the Magistrate Judge's

---

³Among other cases, *Apostolic Pentecostal Church v. Colbert*, 169 F.3d 409, 414-15 (6th Cir. 1999), persuasively refutes some of *Oklahoma Radio* and *Strong*'s reasoning..

ultimate conclusion that the Plaintiff failed to show that its service upon BBCI complied with the appropriate procedural rule governing such service.

    2. Service upon an agent of BBCI

The Plaintiff's second objection is that the Magistrate Judge erred in finding that the Plaintiff failed to serve a "proper agent of BBCI." The Plaintiff contends that this conclusion reflects a "fundamental misunderstanding of the procedural history here: Plaintiff did not serve . . . the writ upon BBCI; instead, plaintiff served [it] upon BBAG in care of its general agent, BBCI." The Plaintiff argues, without citation to supporting authority, that "[a]s is true for every service of process delivered to CT Corporation, service upon a corporation in its role of general agent of another corporation does not require service upon the agent corporation's officer or manager."[4] The Court finds this argument to be frivolous.

As best this Court can determine, no court has ever held that Fed. R. Civ. P. 4(h)(1)(B)'s requirement that process be personally served on an officer, manager or legal agent of a corporation is somehow waived – thereby allowing delivery of process to anyone connected to the corporation regardless of their identity or status – where the party making the service purports to be serving another entity vicariously through the recipient of the process. The

---

[4]Although not explained by the Plaintiff, "CT Corporation" is "a commercial corporation which, for a fee, acts as a registered agent for service of process throughout the United States." *Air-Shields, Inc. v. Fullam*, 891 F.2d 63, 64 (3d Cir. 1989). A Westlaw search in the ALLFEDS database, using only the term "CT Corporation," returns 260 cases. None of these cases explicitly or implicitly find that delivery of process to anyone at the CT Corporation, regardless of their capacity or authority, is sufficient to comply with Fed. R. Civ. P. 4(h). Moreover, the Court has some doubt that procedures for effecting service on a corporation supplying registered agent services to others – a corporation that, presumably, appoints many of its employees to receive service under Fed. R. Civ. P. 4(h) – is comparable to the facts of this case.

7

Plaintiff cites no authority for such a remarkable proposition,[5] nor does it make a reasonable legal argument in support of that contention.

The purpose of Rule 4(h) is to ensure that when a litigant serves process on a corporation, the process is delivered to a person of sufficient rank and control in the corporation such that the court can be reasonably assured that those corporate officials responsible for responding to the suit will actually be apprised of its pendency. *See generally Nature's First, Inc. v. Nature's First Law, Inc.*, 436 F.Supp.2d 368, 374 (D. Conn. 2006), *quoting Montclair Electronics, Inc. v. Electra/Midland Corp.*, 326 F.Supp. 839, 842 (S.D.N.Y. 1971). The Plaintiff's argument – that anyone with even the remotest connection to a corporation can receive service when the corporation is being served with process not in its own name, but as an agent on behalf of another entity – would vitiate that purpose in a context where there is an additional layer of

---

[5]Perhaps the closest case to this proposition would be *City of Clarksdale v. BellSouth Telecommunications, Inc.*, 428 F.3d 206, 211-13 (5th Cir. 2005). In that case, the court considered whether a Notice of Removal had been filed within 30 days of service of process on the defendant. There, the plaintiff attempted service on the defendant by leaving copies of the summons in an "inbox" outside the then-closed office of the defendant's registered agent. The defendant contended that it was not served, sufficient to start the removal clock running, until several days later when an office employee may have retrieved the papers left in the inbox. Applying the law of the State of Mississippi, the 5th Circuit considered the possibility that "the statute authorizes service on a registered-agent corporation itself-not a human employee thereof," but ultimately concluded that, for other reasons, "we do not need to decide whether the district court was correct in saying that service on a corporation [as agent for another] must be directly on a human actor." *Id.* at 211, 214. Nevertheless, the court expressly found persuasive authority for the proposition that "delivery at defendant's place of business on a Saturday, when the offices are closed, to a security guard, who is not authorized to receive service on behalf of the corporation, is not [service sufficient to start the removal clock]." *Id.* at 213, *quoting Tech Hills II v. Phoenix Home Life Ins. Co.*, 5 F.3d 963 (6th Cir.1993).

Needless to say, *City of Clarksdale* is inapposite here for a host of reasons, including the distinguishable procedural context, the application of Mississippi law, and the court's refusal to conclusively resolve the question. Nevertheless, authority which at least refers to the proposition urged by the Plaintiff without necessarily deciding it is preferable to the absence of any authority whatsoever.

8

communication (process recipient –> agent corporation; agent corporation –> principal corporation) to be navigated and the possibility of insufficient notice to the actual party in the case is even more likely. Thus, acceptance of the Plaintiff's argument would subvert the very purposes that Rule 4(h) serves.

Moreover, Plaintiff's argument suffers from an unwarranted factual assumption. The Plaintiff appears to simply assume that, under Rule 4(h)(1), it "delivered" the writ to BBCI. However, the record reflects that the Plaintiff actually delivered the writ to a person identified only as "C. Byerly."[6] The Plaintiff assumes that delivery to C. Byerly and delivery to BBCI are synonymous, but offers no explanation why, either legally or factually, that should be the case. It is a fundamental axiom of the law of agency that employees of a corporation (assuming C. Byerly is, in fact, an employee of BBCI) do not necessarily act as agents of that corporation at all times and for all purposes. Thus, absent a showing that C. Byerly received the process as a duly appointed agent of BBCI, the Plaintiff's argument that the writ was served upon BBCI is unsupported. The Plaintiff's argument that Magistrate Judge erred in finding insufficient service on BBCI is without merit.

The Court further finds that this argument is frivolous. The Plaintiff's assertion that "service upon a corporation in its role as general agent of another corporation does not require service upon the agent corporation's office or manager" posits an entirely novel interpretation of the law, yet fails to cite any authority recognizing the merit of that interpretation or even supply

---

[6]The record does not reflect who C. Byerly is, whether he or she is an officer or employee (or a contractor, intern, janitor, or even customer) of BBCI, nor even establish where C. Byerly was (*e.g.* inside BBCI's offices, at BBCI's reception desk, in the lobby of the building where BBCI offices are found, on the street in front of BBCI's building, etc.) when he or she received the process.

a logical rationale for construing the Rule to reach that conclusion. As explained below, the Court finds that this argument warrants an award of costs and fees in favor of BBCI and against the Plaintiff's counsel.

      3. <u>Process was served by the Ms. Raio</u>

Next, the Plaintiff argues that the Magistrate Judge erred in finding that the service was effectuated by the Federal Express delivery person, and thus, that the return of service had to be attested to by him or her. The Plaintiff argues that the "service" was actually effectuated by its counsel's employee, Ms. Raio, who retained Federal Express to make the delivery. Thus, argues the Plaintiff, Ms. Raio was the proper party to complete the return of service. In support of this contention, the Plaintiff cites to a single case, *In re William B. Kessler, Inc.*, 29 B.R. 358 (S.D.N.Y. 1983), for the proposition that service of process there was made by the attorney, who had retained a messenger company to actually deliver the process.

This contention is frivolous as well. *Kessler* did not involve service of process under Fed. R. Civ. P. 4, but service of a court order under Fed. R. Civ. P. 5(b). There can be little argument that, under Colorado law, a writ of garnishment is "process" that must be served pursuant to the strictures of C.R.C.P. 4 and/or Fed. R. Civ. P. 4. *See* C.R.C.P. 103(4)(d). The patent absurdity of the Plaintiff's position is demonstrated by a simple parsing of the text of Rule 4. Fed. R. Civ. P. 4(*l*) provides that a return of service must be made "by the server's affidavit." Here, by the Plaintiff's own argument above, the "service" in question was the delivery of the writ of garnishment to C. Byerly – an act that was performed not by Ms. Raio, but by the Federal Express employee delivering the writ. Thus, the proof of service must be made by the affidavit of the Federal Express employee, not Ms. Raio. Nothing in the text of Rule 4 permits an

10

assumption that the attorney or office staffer retaining a process server, rather than the process server him- or herself, is the proper party to complete an affidavit of service. Thus, the Magistrate Judge's conclusion on this point was correct, and the Plaintiff's objection is without merit.

Because the Plaintiff's sole authority for this argument is a case interpreting an entirely different and patently inapplicable procedural rule, and the Plaintiff offers no meaningful argument in favor of extending existing legal principles to encompass the situation presented here, the Court finds the Plaintiff's argument on this point to be frivolous and awards costs and fees to BBCI and against the Plaintiff's counsel as set forth below.

4. <u>BBCI waived its right to contest service</u>

The Plaintiff argues that the Magistrate Judge erred in finding that BBCI's informal acknowledgment of receipt of the writ did not amount to a waiver of its right to challenge the sufficiency of the service in court.

A full understanding of this argument requires additional factual context. Before serving the writ at issue here – directed at BBAG – the Plaintiff first attempted to serve a writ of garnishment on BBCI in its own name. The Plaintiff served that writ, like the one at issue here, by Federal Express delivery to BBCI. BBCI returned the writ to the Plaintiff, denying that it held any assets of the Defendant and informing the Plaintiff that any proceeds of the Nigeria project payable to the Defendant would be held by BBAG. The Plaintiff then attempted service of the instant writ, this time directed at BBAG, on BBCI.

The Plaintiff contends that, by failing to challenge the sufficiency of service of the original writ directed at BBCI, BBCI has waived the right to contest the sufficiency of service of

11

the current writ directed at BBAG. It cites to *Donovan v. Burgett Greenhouses, Inc.*, 759 F.2d 1483, 1485 (10th Cir. 1985), for the proposition that a party's failure to challenge allegedly defective service in one suit "constitutes a waiver [in a subsequent suit] of whatever objection may have existed in the original suit." The Plaintiff misrepresents the holding of *Donovan*. There, a judgment had been entered against the defendant, directing payment of certain wages, and the time for appealing that judgment had passed without action. The defendant failed to pay the wages as required, and the plaintiff commenced a new action to enforce the judgment. In the new action, the defendant argued, among other things, "that the original judgment is void for want of proper service of process." 759 F.2d at 1485 (emphasis added). The 10th Circuit quickly disposed of this argument, stating that "defects in in personam jurisdiction can be waived," and finding that "Defendant's actions in defending the original suit without objection . . constitutes a waiver of whatever objection may have existed in the original suit." *Id.* (emphasis added).

Obviously, *Donovan* stands only for the unremarkable precept that a defendant may not collaterally attack the sufficiency of personal jurisdiction over it once a judgment has been duly entered against it and the time for appeal has passed. It does not, as the Plaintiff appears to contend, stand for the proposition that the defendant is thereafter forever barred from contesting personal jurisdiction in any new action that may be brought against it. Once again, the Court finds that the Plaintiff has taken a remarkable legal position without sufficient supporting authority or a reasonable argument for extending the existing law. Thus, this contention is also frivolous, warranting an award of costs and fees to BBCI.

The Plaintiff's second argument under this point is that, because BBCI received actual notice of the writ of garnishment, the Court should overlook any defect in the sufficiency of

service. The Plaintiff's only support for this contention is a quote from Wright & Miller, Federal Practice and Procedure, Civil 2d, § 1391, which, in turn, interprets Fed. R. Civ. P. 12(h)(1). That rule provides that certain Rule 12(b) defenses, including insufficiency of service of process, are deemed waived if not asserted in either a Rule 12 motion or the defendant's first responsive pleading. The Plaintiff relies on Federal Practice and Procedure for a further extension of this rule: that certain technical defenses, including insufficiency of process or service, may be deemed to have been waived if the party has actual knowledge of the commencement of the suit and fails to challenge it within Rule 12(b)'s 20-day period for moving against or responding to the initial pleading. *Id.* at § 1391, p. 520-22 (3d ed.)

A belabored analysis of the issue would be superfluous, as this Court agrees with the comprehensive and persuasive discussion of the issue in *U.S. ex rel. Combustion Systems Sales, Inc. v. Eastern Metal Products and Fabricators, Inc.*, 112 F.R.D. 685, 686-90 (M.D. N.C. 1986). As a result of its thorough reasoning, *Combustion Systems* concludes that three conditions must be met before a defendant in default may be deemed to have waived insufficient service of process under Rule 12(h): (i) the plaintiff must show that it made a good faith effort to effect service under the rules; (ii) the defendant must have had actual notice of the suit; and (iii) the defendant allowed a default judgment to be entered against it. *Id.* at 688. In *Combustion Systems*, the court found that at least two of these conditions were unmet. First, it found that the plaintiff could not show a good faith belief that its service had been proper, as the defendant had promptly advised the plaintiff of its belief that the service was defective. *Id.* at 690. Second, it found that default had been entered against the defendant, but a default judgment had not yet been taken. *Id.*

13

Although the facts here are slightly less clear-cut than those in *Combustion Systems*, this Court reaches the same result for essentially the same reasons. Here, BBCI's communications with the Plaintiff upon receipt of the writ did not appear to address the insufficiency of service, but the Court nevertheless finds that the Plaintiff could not have harbored a good faith belief that its service was sufficient. First, although the record does not reveal that BBCI ever gave notice to the Plaintiff of the defective service, the Magistrate Judge did so in his June 2, 2006 Minute Order **(# 6)**, which directed the Plaintiff to show "whether service of process by Federal Express delivery is a legally appropriate method of serving process."[7] Second, as discussed above, the Court has found that the Plaintiff's justification for its chosen method of service is patently frivolous. A reasonable attorney receiving the Magistrate Judge's Minute Order and conducting a good faith review of the law governing service would have been forced to conclude that its service was insufficient and would have withdrawn the request for default.

Second, like *Combustion Systems*, no default judgment has entered here. As explained in that case, the rationale for requiring a default judgment to enter before service deficiencies can be inferred to have been waived is to preserve the value of the Court's expenditure of time and resources in determining and entering a default judgment. 112 F.R.D. at 689-90. Here, an argument might be made that, by issuing his Minute Order and reviewing the Plaintiff's

---

[7]This Court ascribes little significance to the Magistrate Judge's subsequent conclusion that the Plaintiff had made a "colorable argument that service of process was properly effected." **(# 8)**. The scope of the Magistrate Judge's review of an uncontested request for entry of default differs from the scope of this Court's review on the Plaintiff's contested objections to the Magistrate Judge's decision to vacate the default. Moreover, even the Magistrate Judge's conclusion that the Plaintiff had offered a "colorable argument" expressly noted that "the legal sufficiency of jurisdiction will be addressed upon motion for default judgment," clearly indicating that the Magistrate Judge's imprimatur was intended to have only superficial effect.

14

responsive submission justifying its chosen method of service, the Magistrate Judge expended more Court resources than would ordinarily attend a request for entry of default. However, as discussed in the footnote above, this Court finds that the Magistrate Judge's substantive review of the issues herein at the Minute Order stage was fleeting and superficial, and any expenditure of Court resources on this issue was effectively inconsequential.

Thus, for essentially the same reasons articulated in *Combustion Systems*, this Court finds that BBCI's actual knowledge of this proceeding is insufficient to permit an inference that it waived any defect in service under Rule 12(h) by not raising it prior to the instant Motion to Vacate Default. The Magistrate Judge's conclusion that BBCI did not waive its right to object to service was not erroneous.

    5. Failure to apply Fed. R. Civ. P. 55(c)'s "good cause" standard

Finally, the Plaintiff makes a perfunctory argument that the Magistrate Judge's failure to require BBCI to satisfy the "good cause" standard of Fed. R. Civ. P. 55(c) was error. The Plaintiff's argument on this point is sufficiently brief to permit quoting it in its entirety:

> The obligation to respond timely so as to preserve and interpose the defense of ineffective service also supports the argument that BBCI has to comply with the three-factor "good cause shown" standard of Rule 55(c). The October 24 Order alludes to be then ignores this issue, and thereby fails to hold BBCI to that standard. This failure is clearly erroneous and contrary to law. Accordingly, the October 24 Order must be set aside and the BBCI Motion denied.

Assuming, without necessarily finding, that this argument is sufficiently specific to avoid waiver of the objection, *see generally U.S. v. One Parcel of Real Property*, 73 F.3d 1057, 1060 (10th Cir. 1996) ("only an objection that is sufficiently specific to focus the district court's attention on the factual and legal issues that are truly in dispute" will warrant review), the Court

finds that it is without merit. As the Magistrate Judge observed, an entry of default will only be vacated upon a showing of "good cause" by the party in default. Fed. R. Civ. P. 55(c). In the 10th Circuit, the existence of "good cause" is analyzed under a three-factor test: (i) whether the default was the result of culpable conduct by the defendant; (ii) whether the plaintiff would be prejudiced if the default were set aside; and (iii) whether the defendant possesses a meritorious defense. *Hunt v. Ford Motor Co.*, 65 F.3d 178, 1995 WL 523646 (10th Cir. Aug. 29, 1995) (table), *citing In re Dierschke*, 975 F.2d 181, 183 (5th Cir.1992). The factors are "not talismanic," and the Court may consider only some of the listed factors or may turn to other factors for additional enlightenment. *Id.*

Although the Magistrate Judge did not make specific findings regarding each of the "good cause" factors, this Court finds that the Magistrate Judge's implicit conclusion that BBCI had shown good cause for the default is correct. On the present record, one might reasonably find that BBCI is culpable for failing to file a formal answer to the writ,[8] but not necessarily – or at least not solely – responsible for any prejudice that may have resulted to the Plaintiff from the failure to respond. The Plaintiff acknowledges that, in response to its attempted service of the BBAG writ, counsel for BBCI's parent company, Fru-Con Construction, wrote to the Plaintiff's counsel and formally denied holding any assets belonging to the Defendant. Although BBCI

---

[8]Note, however, that C.R.C.P. 103(4) does not contain a clear directive regarding how a garnishee is to answer, much less a garnishee who denies having possession of any of the judgment debtor's property answers the writ. *Compare* C.R.C.P. 103(4)(f) (referring only to "answer to a writ of garnishment [that] shows the garnishee is indebted to [or holds property of] such judgment debtor"). Nevertheless, based upon the entirety of C.R.C.P. 103, the Court will assume that a garnishee is required to file a formal answer regardless of its possession as to the efficacy of the attempted garnishment. *See e.g.* C.R.C.P. 103(7)(a)(1) (indicating that a garnishee must "answer or pay any nonexempt earnings directed within the time required," although "the time required" is unclear for purposes of C.R.C.P. 103(4)).

16

may be culpable for not formally filing an answer to this effect with the Court, that failure did not prevent the Plaintiff from moving the matter forward to the next step: a judicial adjudication of BBCI's liability under the writ. *See* C.R.C.P. 103(8)(a) (allowing creditor to file traverse and, thereafter, seek adjudication of garnishee's possession of debtor's property within 20 days "from the date such answer should have been filed with the court"). In choosing to ignore BBCI's informal answer to the writ and, thereafter, seeking to proceed through the mechanism of default, C.R.C.P. 103(7), rather than judicial determination, C.R.C.P. 103(8), the Plaintiff essentially forfeited the opportunity to obtain a conclusive judicial determination on the merits of its contention, instead taking the risk that a default judgment that could withstand collateral attack could be obtained more expeditiously. Thus, any present claim by the Plaintiff that vacating the entry of default would prejudice it largely reflects the consequences of the Plaintiff's strategic choice, not conduct that is exclusively (or even predominantly) attributable to BBCI.

Finally, for the reasons discussed above, the Court finds that BBCI has articulated a meritorious defense, in that it contends that the Plaintiff failed to secure personal jurisdiction over it by failing to properly effect service of process.[9] Accordingly, weighing the various factors bearing on the question of "good cause" to vacate an entry of default under Rule 55(c), the Court finds that BBCI has shown the existence of such good cause. Thus, the Magistrate Judge's implicit conclusion of the same is not error.

For these reasons, the Plaintiff's Objections are overruled in their entirety, and the Court

---

[9]In addition, for purposes of this Order, the Court has presumed the correctness of the Plaintiff's argument that BBCI is the alter ego of BBAG. However, the Court has grave doubts that if that contention were challenged, the evidence on that point produced by the Plaintiff to date would suffice.

affirms the Magistrate Judge's Order granting BBCI's Motion to Vacate the Entry of Default.

### C. Sanctions

BBCI requests an award of its costs and fees pursuant to C.R.S. § 13-16-123. That statute provides that "In any action before the court in which a garnishee incurs attorney fees in excess of the cost of filing and preparing his answer, the court may order that the cost of the proceeding. . . and reasonable attorney fees be paid to the garnishee [if] the bringing, maintaining, or defense of the action . . was frivolous, groundless, or without reasonable basis." The Court finds that this statute is part of the State of Colorado's established procedure supplementary to garnishment proceedings, and thus, is enforceable by the terms of Fed. R. Civ. P. 69.[10]

As discussed above, the Court has concluded that several of the arguments advanced by the Plaintiff were frivolous and lacked a reasonable legal or rational basis. Addressing these frivolous arguments obviously required BBCI to incur costs and attorney's fees beyond that which it would otherwise have expended. Accordingly, the Court finds that BBCI is entitled to an award of costs and fees under C.R.S. § 13-16-123 with regard to those fees incurred in responding to the arguments identified by the Court as being frivolous. Because the fees relate solely to frivolous legal arguments, such fees shall be paid by the Plaintiff's counsel and not charged against the Plaintiff itself.

---

[10]To the extent that the request had been made under the Federal Rules of Civil Procedure, the Court would also find the conduct sanctionable under Fed. R. Civ. P. 11(b)(2). Pursuant to Fed. R. Civ. P. 11(c)(3), the Plaintiff's counsel may include, in its response to BBCI's statement of fees, a showing as to why sanctions should not be imposed based on the contents of the Objections. However, this is not an invitation to the Plaintiff to proffer additional arguments as to the merits of the Objections or to otherwise seek reconsideration of the substantive findings of this Order.

The parties shall confer and attempt to resolve the amount of attorney's fees subject to this order. If such discussions are unavailing, within 14 days of the date of this Order, BBCI shall file a statement of attorney's fees and supporting documentation setting forth its position as to what fees fall within the terms of the sanction. The Plaintiff's counsel may respond within 14 days of BBCI's filing. No reply will be permitted.

## **CONCLUSION**

For the foregoing reasons, the Plaintiff's Objections **(# 15)** are **OVERRULED**. The Order **(# 13)** of United States Magistrate Judge is **AFFIRMED**. BBCI's Motion to Set Aside Default **(# 10)** is **GRANTED**, and the Clerk's Entry of Default **(# 9)** is **VACATED** and the service of the writ upon BBCI as agent for BBAG is **QUASHED** The costs and fees incurred by BBCI in responding to the designated portions of the Objections are awarded to BBCI as set forth herein.

Dated this 22nd day of January, 2009

                                                     **BY THE COURT:**

                                                     Marcia S. Krieger
                                                     United States District Judge