IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable Marcia S. Krieger

Civil Action No. 06-cv-02312-MSK

INVERSORA MURTEN, S.A.,

    Plaintiff,

v.

ENERGOPROJEKT HOLDING COMPANY,

    Defendant,

and

BILFINGER BERGER CIVIL, INC.,

    Garnishee.

---

**OPINION AND ORDER AWARDING ATTORNEYS' FEES AND COSTS**

---

**THIS MATTER** comes before the Court pursuant to the Court's *sua sponte* award of attorneys' fees and costs to Garnishee Bilfinger Berger Civil, Inc. ("BBCI") and against Plaintiff, Inversora Murten, S.A.'s counsel **(# 20)**, BBCI's subsequent statement of attorneys' fees incurred **(# 21)**, and the Plaintiff's counsel's response **(# 26)**.

**I. Facts**

The reader's familiarity with the proceedings to date is assumed, and to the extent necessary, the Court's January 22, 2009 Order **(# 20)** is deemed incorporated herein. In brief summary, the Plaintiff attempted to collect a judgment against the Defendant by garnishing funds owing to the Defendant by an entity named Bilfinger Berger A.G. ("BBAG"). BBAG is

1

located outside the United States. Believing thta BBCI was BBAG's designated agent for service of process, the Plaintiff attempted to serve BBAG with the garnishment by delivering it via Federal Express to BBCI. BBCI sought to quash the service of the garnishment as improper, and the Magistrate Judge granted **(#13)** that request.

Pursuant to Fed. R. Civ. P. 72(a), the Plaintiff objected to the Magistrate Judge's determination. Upon its review of the Objections, this Court found three of the grounds urged by the Plaintiff to be frivolous, and *sua sponte* awarded attorneys' fees and costs to BBCI pursuant to C.R.S. § 13-16-123.[1]

The three arguments found to be frivolous are that: (i) service of a garnishment on a corporation in its capacity as an agent for another corporation does not require service upon an officer or manager of the agent corporation, but instead, may be made on any employee of the agent corporation; (ii) when process is delivered by a courier, the affidavit of service may properly be completed by the attorney (or his or her employee) who dispatched the courier, rather than by the courier him- or herself; and (iii) that a person who has informally acknowledged a prior effort at service of process without objection consents and waives any objections to future attempts at service performed in the same manner.

In accordance with this Court's Order, BBCI filed its statement of fees **(# 21)**, stating that it incurred $ 8,404 in costs and fees in responding to the frivolous objections of the Plaintiff. In response the Order **(# 26)**, the Plaintiff contends: (i) that fees may not be awarded in favor of BBCI under C.R.S. § 13-16-123, because BBAG, not BBCI, was the subject of the garnishment;

---

[1]This Colorado statute specifically applies to garnishments made applicable through Fed. R. Civ. P. 69, although the Court alternatively found sanctions to be appropriate pursuant to Fed. R. Civ. P. 11(b).

(ii) that the arguments raised by the Plaintiff in the Objections were not frivolous, were supported by precedent or a good-faith argument in favor of extending existing law; and (iii) that the amount claimed by BBCI is excessive.

## II. Analysis

### A. Party eligible to receive sanctions

The Court first turns to the Plaintiff's argument that BBCI is not the proper party to whom costs and fees may be awarded under C.R.S. § 13-16-213. The Plaintiff points out that this statute permits an award of costs and fees in favor of "a garnishee [who] incurs attorney fees in excess of the cost of preparing and filing his answer [to the garnishment]." The Plaintiff argues that here, BBCI was served not as the garnishee itself, but rather, as an agent for the true garnishee, BBAG. A technical reading of the statute indicates that there may be some merit to this contention, particularly insofar as the statute contemplates an award of fees "in excess of the cost of preparing and filing [an] answer" – an act which BBCI, being served as an agent rather than a garnishee, would not be called upon to perform. But assuming this is the case, it is not dispositive. The Court's prior order noted in footnote 10 that it considered the Plaintiff's conduct to independently be sanctionable under Fed. R. Civ. P. 11(b)(2).

Assuming that the Plaintiff's conduct is not subject to sanction because BBCI was not the actual garnishee, sanctions are nevertheless appropriate because the Plaintiff's conduct frivolously and vexatiously caused BBCI to expend fees and costs in the course of seeking to quash the process served upon it. The Plaintiff contends that Rule 11 sanctions cannot lie here because BBCI did not request them, and thus, did not comply with the safe harbor provisions of Rule 11(c)(2). That argument ignores the reality that the sanctions were imposed on the Court's

3

own initiative pursuant to Rule 11(c)(3), for which no safe harbor provision applies. In effect, the Court's January 22, 2009 Order constituted the "order to show cause" contemplated by Rule 11(c)(3). Plaintiff's counsel has now availed itself of the opportunity to respond and to argue that the Objections were not actually frivolous and that no sanction should be imposed. Thus, the requirements of notice and an opportunity to be heard have been satisfied.

**B. Were the Objections by the Plaintiff frivolous?**

The Court turns to the various contentions that it previously found to be frivolous. In this regard, it carefully considers Plaintiff's contention that a good-faith legal basis supported each argument.

The first argument the Court deemed frivolous was the Plaintiff's contention that, when serving a corporation in its capacity as an agent for another entity, delivery of the pertinent documents to any employee of the agent corporation, not just an officer or agent, is sufficient.[2] The Plaintiff offers several arguments in support of a contention that this argument either comports with existing law or reflects a good-faith argument for extension of existing law.

First, it states that *K.J. Schwartzbaum, Inc. v. Evans, Inc.*, 44 F.R.D. 589 (S.D.N.Y 1968) recognizes this proposition. This case does not stand for that proposition and is distinguishable for two reasons. In *Schwartzbaum*, a subsidiary was served on behalf of a parent corporation. In finding adequate service, the court essentially "pierced the corporate veil," finding that the

---

[2] The Magistrate Judge applied the Colorado Rules of Civil Procedure for service of garnishments based upon the provisions of Fed. R. Civ. P. 69. The Plaintiff contended that this was error, and that service was made in conformance with Fed. R. Civ. P. 4. Recognizing that there is no difference between the appropriate provisions of Rule 4 of the Colorado Rules of Civil Procedure and Rule 4 the Federal Rules of Civil Procedure, this Court did not resolve the dispute. For purposes of this ruling, the Court will assume, without deciding that it is Federal Rule 4 that applies.

parent and subsidiaries were was alter egos, thus service upon one was service upon the other. *Id.* at 592 ("although the parent company herein and its subsidiary are formally structured as two separate and independent entities, in actuality the subsidiary is deeply connected to the overall operations of defendant and its day-to-day activities are controlled by defendant's own staff personnel"). No evidence has been present to prove that such situation exists between BBAG and BBCI. Indeed, the Plaintiff's position throughout this action has been that BBCI was BBAG's agent for service of process, not its alter ego. Thus, a case such as *Schwartzbaum* does not provide any guidance for ascertaining the contours of service upon a corporation in its capacity as another corporation's agent for service of process.

In addition, the service in *Schwartzbaum* was indeed made on an officer of the corporation of the subsidiary. The court notes that the defendant <u>argued</u> "that service was effected on an employee of its independent subsidiary, which employee was neither an officer, director, managing or general agent." *Id.* at 592. However, the court rejected such argument, and instead found that service was effected on "by delivering the summons and complaint to Harry Schindler, <u>vice-president</u> of Evans of New York" and that Mr. Schindler was "an employee <u>in charge of the operations</u> of the subsidiary." *Id.* at 592, 593 (emphasis added). Thus, rather than supporting the Plaintiff's contention here that service on a corporation can be made upon any employee[3] of the corporation, *Schwartzbaum* stands for the unremarkable proposition that service on an officer (*e.g.* vice-president) of a corporation is valid service upon

---

[3] As the Court noted in its January 22, 2009 Order, Federal Express delivered the garnishment to BBCI's office. A "C. Byerly" signed the receipt for the Federal Express letter, but there is no evidence that the "C. Byerly" had any actual connection to BBCI or its operations, that he or she was an employee of BBCI, or what role, if any, he or she played in the operations of BBCI .

5

its corporate alter-ego. It does not support the Plaintiff's Objections.

Secondly, the Plaintiff relies upon *Direct Mail Specialists, Inc. v. Eclat Computerized Technologies, Inc.*, 840 F.2d 685 (9th Cir. 1988), arguing that it stands for the proposition that service upon any member of a corporation's office staff constitutes valid service on a corporation if there is also evidence that corporate officers received the actual notice of the suit. In *Direct Mail*, the plaintiff attempted service on the defendant by going to its corporate office and speaking with the receptionist, who stated that no one authorized to accept service of process was in the office. The process server inquired as to who was in charge of the office, and the receptionist responded that "I'm the only one here." *Id.* at 687. The process server delivered the documents to the receptionist, who promptly delivered them to a corporate officer.

In upholding the sufficiency of service on the receptionist, the 9th Circuit observed that although she was not technically a "an officer, a managing or general agent" or otherwise specifically designated by the corporation to receive process, she was "a representative so integrated with the organization that [she] will know what to do with the papers." *Id.* at 688. The court observed that in the circumstances presented, the receptionist played a role "commensurately large in the structure of the company," and that the fact that she was the only employee available in the office at the time indicated "that more than minimal responsibility was assigned to her." These circumstances, coupled with evidence that corporate officials had received actual notice of the process, led the court to find that the service was proper.

*Direct Mail* is also distinguishable on its facts. In *Direct Mail*, there was evidence of who received process and the fact that that person played an important role in overseeing the corporate offices. Here, a "C. Byerly" signed for receipt of a letter delivered by Federal Express.

6

There is no evidence of who "C. Byerly" is, what connection he or she has to BBCI, and if he or she was an employee of BBCI, what role that he or she played in BBCI's organization. Had the Plaintiff come forward with evidence that C. Byerly had made representations to the process server that he or she was the only person in the office at the time service was effected, implicitly indicating that he or she would be authorized to receive process, the result here certainly would have been different. But such facts have never been proffered or presented.

Without some factual similarity to the particular circumstances of *Direct Mail*, the Plaintiff must be arguing that *Direct Mail* stands for the proposition that service on any corporate employee, regardless role in the organization is sufficient if the corporate officials ultimately learn of the service. *Direct Mail* clearly does not stand for that proposition, as the court took pains to examine the receptionist's role within the corporation, rather than simply deciding the case based on the apparent actual notice received by corporate officials. Nor could this Court interpret *Direct Mail* in that fashion because to do so would contradict the specific provisions of rules such as Fed. R. Civ. P. 4(h)(1)(B). Although actual notice may be a factor in determining the sufficiency of service <u>in conjunction with other evidence</u> that establishes that service closely comported with the letter of Rule 4(h)(1)(B), neither *Direct Mail* nor any other case stands for the proposition that the Plaintiff asserted here.

Finally, the Court rejects Plaintiff's argument that service upon BBCI is the functional equivalent of service on an entity that is in the business as acting as the registered agent for service of process upon its corporate customers. Repeating an observation made by the Court in its January 22, 2009 Order, a corporation providing registered agent services of this type might be expected to formally designate non-officer employees to receive process because that is its

7

business. The Plaintiffs offer no explanation why that same assumption is compelled in the circumstances here. Accordingly, the Plaintiff has shown noting that refutes the Court's prior observation that this Objection was frivolous.

Next, the Court examines the Plaintiff's contention that the affidavit of the attorney's employee who directed Federal Express to deliver the garnishment is sufficient to establish that service was properly made. The Plaintiff poses the rhetorical question that "who other than an attorney or office staffer can complete such an affidavit when, for example, service is made by international courier or mail upon an overseas corporation pursuant to Rule 4(h)(2),"[4] and cites several cases.

Rule 4(h)(2) entails procedures for serving an overseas corporation. In most circumstances, such service is accomplished pursuant to the Hague Convention,[5] in that the party attempting service mails process to the Central Authority of the receiving nation, and that Central Authority then effects service on the defendant in accordance with local law. The Plaintiff argues that because Rule 4(h)(2) permits proof of service to be filed by the person who dispatched it (as distinct from the person who physically delivered process) in these circumstances, its "arguments in the Objections do nothing more than attempt to extend existing

---

[4]Ignoring the irrelevant predicate in the latter half of the question, the rhetorical question posed by the Plaintiff is easily answered. Where a Federal Express courier delivers the process, an affidavit of that courier as to the circumstances of that delivery is required, just as a process server, not the attorney who dispatches him or her, completes an affidavit of service.

[5]Three of the four cases cited by the Plaintiff – *Wong v. Partygaming, Ltd.*, 2008 WL 1995369 (N.D.Oh. May 6, 2008); *Eli Lilly & Co. v. Roussel Corp.*, 23 F.Supp.2d 460, 473-74 (D.N.J. 1998); and *Marschhauser v. Travelers Indem. Co.*, 145 F.R.D. 605, 608-10 (S.D.Fl. 1992) – address attempts at international service under the Hague Convention. Under the Rule 4 of Federal Rules of Civil Procedure, however, domestic service by mail is not permitted. Thus, these cases are factually distinct for an additional reason.

law."  This argument, itself, is frivolous and ingenuous.  Plaintiff has not asked for an extension of the law, but instead for *post hoc* blessing of its failure to conform to the law - as expressly set out in the Federal Rules of Civil Procedure.   The Plaintiff did not purport to serve BBCI (or even BBAG) pursuant to Rule 4(h)(2), which governs service on a corporation "at a place not within any judicial district of the United States," and thus, the unique considerations that underlie questions involving international service of process are not at issue. There is no similarity between Hague Convention cases[6] and domestic service of garden variety garnishments that justifies abrogation of applicable rules.

Finally, the Plaintiff disputes the Court's determination that its argument that BBCI waived any objection to service of the writ was frivolous.  The Plaintiff does not point to any law supporting this contention; rather, it merely states that its intention was to "explain, however inartfully," its position that BBCI's prior lack of objection to a prior writ served upon it directly was believed by the Plaintiff to be a waiver of BBCI's right to contest service of a writ directed at BBAG upon it.

The Court disagrees; there was nothing "inartful" about the way the Plaintiff stated its argument – Plaintiff clearly stated its position and the Court fully understood and summarized that argument in its January 22, 2009 Order.  The argument was simply one without any arguable legal basis.  The Plaintiff's current filing does nothing more to defend the reasonableness of such

---

[6]Perhaps most damning, the Objections made no mention of Rule 4(h)(2) or the Hague Convention; the only justification offered by the Plaintiff for this argument in the Objections concerned the clearly inapplicable Fed. R. Civ. P. 5.  Were the Plaintiff genuinely intending to argue for an extension of existing law in the Objections, one would reasonably expect it to have clearly identified the law it was seeking to extend and to explain why the principles underlying that law have merit in the current situation.

an argument; at most, the Plaintiff explains (without citation to authority) that by arguing "waiver," it more correctly intended to argue "equitable estoppel." Equitable estoppel would require evidence to establish facts to justify an equitable remedy. None has been offered. Because the Plaintiff has done nothing more than re-assert an argument that the Court fully appreciated and deemed frivolous, the Plaintiff's current submission does not warrant reconsideration of the Court's prior opinion.

Nor does the fact that the Magistrate Judge previously deemed the Plaintiff to have made a "colorable argument that service was properly effected" relieve the Plaintiff from the consequences of its frivolous waiver argument. The Magistrate Judge made that comment in an August 18, 2006 Minute Order **(# 8)** that predated BBCI's August 29, 2006 motion to quash service. The issue of waiver was not raised by the Plaintiff until <u>after</u> BBCI moved to quash service. Thus, the observation by the Magistrate Judge regarding the colorable argument that the Plaintiff might have for the sufficiency of its service cannot be deemed to be a comment about the colorability of the Plaintiff's waiver argument.

Having carefully considered the Plaintiff's arguments in response to the Court's Order finding the Objections to be frivolous, the Court reluctantly reaches the same conclusion that it did before. Sanctions are properly assessed against the Plaintiff's counsel because the Objections were frivolous.

### III. Sanction

In assessing a sanction that is premised upon compensating BBCI for its attorney's fees and costs, the Court applies the familiar "lodestar" method of calculating the amount of time reasonably spent by BBCI in response to the Plaintiff's frivolous arguments and the reasonable

hourly rate of the attorney's involved, and multiplying those figures to produce a presumptively reasonable "lodestar" amount that, in rare circumstances, can be adjusted upwards or downwards as appropriate. *Pennsylvania v. Delaware Valley Citizens Council for Clean Air*, 478 U.S. 546, 564-65 (1986); *Praseuth v. Rubbermaid, Inc.*, 406 F.3d 1245, 1257(10th Cir. 2005).

The Plaintiff raises no objection to the hourly rates claimed by BBCI for its counsel's time, and thus, the Court limits its analysis to the question of whether the number of hours claimed by BBCI are reasonable. The burden is on the party claiming fees to show that its counsel used "billing judgment" in winnowing the hours <u>actually</u> spent to those <u>reasonably</u> expended, and avoided billing for time that was excessive, redundant, or otherwise unnecessary. *Praseuth*, 406 F.3d at 1257; *Robinson v. City of Edmond*, 160 F.3d 1275, 1281 (10th Cir. 1998). In assessing the reasonableness of claimed hours, the Court considers numerous factors, including, but not limited to, whether the tasks for which compensation is sought are those that would normally be billed to a paying client, the complexity of the case, the number of reasonable strategies pursued, the aggressiveness of the other side, duplication of effort by multiple counsel, and the clarity with which time spent is recorded and allotted to specific tasks. *Id.*, *citing Ramos v. Lamm*, 713 F.2d 546, 553 (10th Cir. 1983), *citing Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir.1974).

BBCI claims a total of 15.7 hours were expended by Mr. Mayne, a partner, and 31 hours for Ms. Voorhees, an associate. BBCI's submissions make clear that these figures include time spent on BBCI's motion to quash service, a reply brief in support of that motion, and responses to the Plaintiff's Objections to the Magistrate Judge's Order. However, the Court's award of sanctions concerned only those arguments that were frivolously raised in the Plaintiff's

11

Objections to the Magistrate Judge's Order, and thus, any award of attorneys' fees must be limited to the time spent responding to those Objections. It would be inappropriate to award fees for BBCI's motion to quash, as that motion predated the Plaintiffs' assertion of any frivolous arguments here.[7] Moreover, the Court declines to award sanctions reflecting time spent by BBCI replying to the Plaintiff's arguments in opposition to the motion to quash. Although the same arguments deemed by this Court to be frivolous were asserted, to some extent, in the Plaintiff's response and thus prompted BBCI's reply brief, the Court notes that BBCI's reply did not request an award of sanctions. Moreover, those arguments were presented to the Magistrate Judge, and for whatever reason, the Magistrate Judge did not see fit to deem those arguments sanctionable. When the Plaintiff filed Objections to the Magistrate Judge's ruling, it was only those particular Objections, not the whole of the prior briefing, that was before this Court. *See U.S. v. One Parcel of Real Property*, 73 F.3d 1057, 1060 (10th Cir. 1996) (Objections must specifically identify the errors made by the Magistrate Judge, and may not simply incorporate prior briefing). Thus, when the Court made findings that the arguments asserted by the Plaintiff were frivolous, that finding extended only to the arguments made in the Objections; it did not purport to consider how and to what extent those arguments were asserted in prior briefing. Accordingly, the Court limits the award of fees and costs to BBCI to only that time spent drafting a response to the Plaintiff's Objections.

Limited to only those billings occurring on or after the Plaintiff's November 14, 2006

---

[7]BBCI has not argued, and the Court has not considered, whether the Plaintiff's very commencement of this proceeding was sanctionable. The Magistrate Judge's observation in the Minute Order that the Plaintiff had presented a colorable argument for service would, in any event, appear to defeat such a conclusion.

filing of Objections, BBCI's request shrinks to 6.2 hours of Mr./Ms. Mayne's time, and 10.7 hours of Ms. Voorhees' time. The Plaintiff argues that these time entries are "so general as to make it impossible to determine how much of the time spent was attributable to the three specified issues." The Court agrees in general with this observation – the billing entries do not specifically break out how much time was spent researching and drafting responses to each particular Objection raised by the Plaintiff. BBCI essentially concedes as much, suggesting that it requests only 3/5 of the sums billed, so as to reflect the fact that the Court found only 3 of the 5 arguments urged in the Objections to be frivolous.

Although the Court is unable to ascertain, with mathematical precision, how much of the time billed by BBCI to the frivolous arguments, that inability does not operate to completely prevent an award of fees. *Cadena v. Pacesetter Corp.*, 224 F.3d 1203, 1215 (10th Cir. 2000) ("this court has not established a rule mandating reduction or denial of a fee request if the prevailing party submits attorney-records which reflect block billing"). Rather, the Court is required to use its discretion to determine how best to separate compensable time spent responding to frivolous arguments from non-compensable time spent responding to colorable ones.

The division proposed by BBCI – a simple reduction of the total time billed by the ratio of frivolous arguments to colorable ones – is one rough means of estimating the appropriate figure. Another, admittedly crude, indication of the time spent on each argument might be to examine the amount of briefing devoted to each. BBCI's specific responses to the 5 Objections raised by the Plaintiff constitute approximately 3 full pages of its brief in opposition; of those 3

pages, a full 2 pages are devoted to rebutting the Plaintiff's frivolous arguments.[8] Thus, although the Court gives relatively little weight to this means of measuring time spent (because of its small sample size, among other things), this measurement would suggest that BBCI should recover 50% or more of its total billings for responding to the Objections. In a less concrete sense, the Court also considers the significance to the overall thrust of the Objections that the frivolous arguments have. The 3 frivolous arguments constitute the core of why the Plaintiff believed that the service was proper; the remaining 2 colorable arguments dealt with an otherwise immaterial challenge to which jurisdiction's service law should be applied and an argument as to whether BBCI had "good cause" to vacate the default that this Court characterized as "perfunctory" and capable of being quoted in its entirety in the Order. By this metric, then, BBCI should recover most of the amounts billed in preparing responses to the Objections.

Weighing these various methods and measurements, the Court is content to award BBCI the amount it requests by virtue of its own calculation method: 3/5 of the total amount spent on the response. Among the various measurement tools discussed above, this one yields some common ground, being the measurement that BBCI itself proposed and being the one whose result is most favorable to the Plaintiff. On the other hand, refusing to make any award, as the Plaintiff urges, would have the unacceptable result of removing any sting from the sanction

---

[8]Alternatively, the Court could examine the extent to which its own Order was required to deal with the Plaintiff's frivolous arguments. Of the roughly 12 pages devoted to addressing the Plaintiff's specific Objections, about 8½ pages address the three frivolous arguments. This, too, would suggest an award of 50% of more of the total time spent by BBCI responding to the Objections should be awarded.

That same measure can be applied to the Plaintiff's Objections themselves. Of 5 pages of substantive argument, about 2½ are devoted to the frivolous arguments.

14

itself, allowing the Plaintiff to escape consequences for its actions out of the sheer fortuity of BBCI's billing practices.

Under the circumstances, the Court finds that the reasonable number of hours expended by BBCI in preparing a response to the Objections is 3.72 hours (6.7 hours x 3/5 or 60%) for Mr. Mayne and 6.42 hours (10.7 hours x 60%) of Ms. Voorhees' time. The parties agree that, in this circumstance, the appropriate amount of the sanction in fees and costs is thus $3,507. The Court sees no basis to adjust this lodestar figure otherwise, and thus, directs a sanction against the Plaintiff's counsel in that amount.

For the foregoing reasons, the Court **SANCTIONS** the Plaintiff's counsel, pursuant to Fed. R. Civ. P. 11, in the amount of $3,507, to be paid to counsel for BBCI. Such payment shall occur within 14 days of the date of this Order, failing which, BBCI may apply to the Court to have the outstanding amount reduced to a judgment in favor of BBCI and against the Plaintiff's counsel. There being no remaining matters to resolve in this action, the Clerk of the Court shall close this case.

Dated this 31st day of March, 2010

**BY THE COURT:**

_Marcia S. Krieger_

Marcia S. Krieger
United States District Judge